CARROLL, Judge
(dissenting).
On rehearing I would affirm the trial court’s judgment of conviction, and therefore I respectfully dissent from the majority judgment of reversal.
The police officer’s testimony, if accepted as true by the trier of the facts, was sufficient to sustain the judgment.[1] Likewise, *708 the contradictory testimony given by the defendant was such as would have justified his acquittal if the trial judge had accepted it as true and had rejected the policeman’s testimony as being unworthy of belief.[2] In this trial without a jury, it was the trial judge’s duty under the law to resolve the conflicts in the evidence, and he was the sole judge of the weight of the evidence and of the credibility of the witnesses. There is no rule that the testimony of a single witness for the state is ineffectual unless corroborated, or which compels the use of more than one witness for the prosecution in order to prove a material fact. The weight of the evidence and the absence of reasonable doubt can not he made to depend upon a numerical superiority of witnesses. Heitman v. Davis, 127 Fla. 1., 172 So. 70S, 706; In re Brackett’s Estate, Fla.App.19S9, 109 So.2d 375, 378; 13 Fla.Jur., Evidence, §§ 409-410 ; 35 Fla.Jur., Witnesses, § 206.
The trial judge’s decision comes to this court with a presumption of correctness which should prompt assumption by this court that his determination of the guilt of the defendant necessarily was based on accepting the testimony of the police officer as true and rejecting the testimony of the defendant as untrue, as was his prerogative under the law.

. The testimony of officer Piche included the following: “A I asked him where his automobile was parked. He stated it was parked in Roberts Drug Store Parking Lot across the street on Sixth Avenue, on the west, at which time we left the front of the store and he pointed to the parking lot. As I started across the street the defendant turned in the opposite direction and ran east on Flagler Street to a Cadillac parked in front of the bus station, approximately a hundred fifty feet from the drugstore. My partner and I chased him down, my partner going to the right hand side of the car and I to the left. The defendant opened the left hand door of the car and picked up the iloormat at the accelerator and took a package from there and dropped it on the ground out *708 side tlie door, by the driver’s door, at ■which time we apprehended him and my partner took the defendant back to the store and I picked up the package.”

. The defendant testified in part as follows : “A I walked toward my car when they walked toward me. X didn't think I was under arrest. And I walked to the car to get my identification papers, and got to the car and the officer run behind me, Officer Davidson’s partner, got through the widow, and I was leaning on the seat of the car opening the glove compartment, and the man with the officer, with the revolver, told me, ‘I could kill you. Get away from the glove compartment;’ and I told him I wasn’t doing anything wrong, that X was looking for my identification papers; and he told me, ‘Get out;’ and I turned around and Officer Piche grabbed me under the arm and helped pull me out.of the car, and pushed me to the rear of the car and pushed me against the fender and looked under the edge of the car, and from there on the seat of the car and on the drivers side, and looked on the sun visor and found the business papers, and I told him, ‘That is what I was looking for’; and after that they ran toward the trunk of the car and take the keys out of the trunk, and came toward me and said, ‘Get in our wagon.’ I got in and they drove around fifteen or twenty minutes through lots looking for a truck, and didn’t go back in with the officer and didn’t say they found anything and didn’t charge me with anything. * * * Q When was the first time you heard anything about narcotics. A At the police station — locked up. Q How long was that. A Fifteen or twenty minutes later.”